VOLTERRA, J.
BACKGROUND
The City of Cambridge (City) is a municipal corporation who in 1982 retained the defendant Briggs Associates, Inc. (Briggs) to prepare a study to determine the extent of asbestos contamination in its public schools, prepare bid documents and specifications for a contract to remove asbestos from the schools, and to supervise and inspect the schools after the completion of the contract to insure compliance. The defendant Northeast Boiler, Insulation & Decking, Inc. (Northeast) was a corporation which engaged in the removal and disposal of asbestos insulation materials. Northeast is no longer in business. It has been substituted in this litigation by its bonding company, Reliance Insurance Company. Briggs is likewise not in business. It is substituted in this litigation by its bonding company, American Employers’ Insurance Company.
City claims that both Briggs and Northeast were negligent and in breach of their contractual obligations in City’s project to remove asbestos from its public schools. City alleges that the defendants’ breaches and negligence caused the City additional and unnecessary expense for the removal of other later discovered asbestos contamination in its schools.
After trial, I conclude that Briggs breached its contractual obligations with City, and that the American Employers’ Insurance Company is liable on its bond. I also conclude that Northeast was not in breach of its obligations pursuant to the contract and that the defendant Reliance Insurance Company is not liable on its bond.
FINDINGS
The City retained Briggs to inspect schools in Cambridge and provide a written report of its findings relative to the presence of asbestos. On November 19, 1982, Briggs provided City with a written report on asbestos in the schools. The report respecting the Fitzgerald School is silent as to any testing in the crawl space area of the school.
City by a contract dated April 19, 1983 retained Briggs to provide contract management services for the sum of $13,115.00 for asbestos removal from various schools, including the Fitzgerald School. An assistant superintendent of schools directed Briggs to establish 0.01 fibers/cm3 as the standard to be adhered to by the asbestos removal contractor. This required that after final clean up the ambient air in any area of the schools would be a concentration of less than 0.01 fibers per cubic centimeter of air.
Briggs prepared the specifications for the work of removing asbestos from the schools of the city. The specifications were the basis for the bid documents used by City to solicit bids for the work.
The work required to be performed at the Fitzgerald School was described in pertinent part as follows:
Fitzgerald School
1.2 REMOVAL AND DISPOSAL
1.2.2 Description of Work:... The asbestos work includes the demolition and removal of all asbestos insulation in boiler room (excluding boiler) and pipe insulation throughout the building, including basement/crawl space . . . [Emphasis supplied.]
The Fitzgerald School was constructed in the 1940s. The crawl space is located beneath the first floor of the school. It has approximately 20,000 square feet of area. The floor is composed of loose sand material. An adult can walk upright in the crawl space. Under the school’s first floor and within the crawl space are various plumbing and heating lines of the building’s mechanical systems. The pipes were insulated with asbestos materials.
City made various repairs and alterations to the mechanical systems contained within the crawl space. Insulation was discarded and replaced as a result of this maintenance.
Asbestos was not generally recognized as a hazardous material until the 1970s. Prior to the 1970s, no precautions were engaged in by applicators and maintenance personnel. Scraps of asbestos would be discarded in areas such as crawl spaces, attics and the like. The material was sometimes buried and covered over by earth or sand in cellars and crawl spaces. Only large pieces would be removed. Small scrap was often buried or raked over.
Briggs negligently failed to identify the buried and covered-over asbestos in the crawl space on the crawl space floor of the Fitzgerald School.
The specifications drawn by Briggs and adopted by City limited the areas of the work to “insulation in boiler room (excluding boiler)” and “pipe insulation throughout the building.” No requirement was made for asbestos removal from the crawl space sand floor. This was the case although it could have been inferred that after 30 years of maintenance to the mechanical *166 systems of the school asbestos would have been discarded into the sandy surface of the earthen floor.
After Northeast completed the work at the Fitzgerald School, testing of the ambient air of the crawl space revealed that it fell within the less than 0.01 of fiber per cubic centimeter of air. I find that Northeast took appropriate care to protect the crawl space area from contamination with asbestos material by the placement of plastic drop cloths under the areas in which they worked or through the use of other techniques which avoided material falling to the ground.
Northeast certified to Cily on September 15,1983 that it had completed its contractual obligations. Thereafter, City’s employees began to reinsulate the plumbing and heating pipes in the Fitzgerald School crawl space. City’s employees by necessity disturbed the soil floor of the crawl space. I find that this activity caused the material which had been buried in the soil to surface. At City’s request, Briggs reinspected the crawl space area to determine if asbestos was still present.
On December 6, 1983, Briggs reported to City that crumbs of asbestos was present in piles of debris. The letter from Briggs to City stated:
Fitzgerald School: A survey of the sand-floored crawl space revealed piles of debris which contains crumbs of asbestos insulation as well as other scraps of wood and refuse. Small crumbs of asbestos were also found scattered across the sand floor in the area of the pipes.
Briggs informed City that it was suspending its September 9, 1983, certificate of final inspection.
Northeast, at City’s demand, returned to the crawl space area to inspect and rectify the problem. Northeast agreed to rake the surface to remove any visible crumbs of asbestos and the small piles of debris that had been raked into piles.
Northeast refused to excavate the floor or take any other remedial activity.
On March 1, 1984, Briggs advised City that Northeast’s recleaning of the crawl space area at the Fitzgerald School had been “most generous . . . since the original clean air samples showed no signs of contamination nor have any re-evaluations revealed elevated fiber counts.”
City, in 1985, filed this action to recover damages for the alleged failures of Briggs and Northeast. However, it was not until 1990 when City entered into a contract with another asbestos removal contractor to remove the soil in the crawl space to a depth of six inches and then encapsulate the crawl space area with concrete. This work was to cost in excess of $74,000. This contractor discovered the existence of asbestos material extended up to nine inches below the surface.
RULINGS
I rule that Northeast fully performed its contractual obligations as specified by the contract. I rule that there was no breach of contract by Northeast. Accordingly, the defendant Reliance Insurance Company has no obligation to City under its performance bond.
I rule that Briggs was negligent in the duty of care it owed City, and that the failure of Briggs to properly inspect the crawl space soil at the Fitzgerald School to determine the presence of asbestos material proximately caused the damages which were sustained by City. The failure of Briggs extends to the lack of appropriate specifications for the removal of the material from the crawl space. City had a right to rely on the engineering skills and expertise of Briggs to detect the presence of asbestos material. The lack of due care on the part of Briggs in drawing appropriate specifications led directly to the failure of the City to draft bid documents which would have required the excavation and encapsulation of soil in the crawl space of the Fitzgerald School.
Thus, I rule that the American Employers’ Insurance Company is liable on its bond for the full face amount of its bond in the sum of $3,200.00.
Accordingly, the plaintiffs complaint against Reliance Insurance Company is dismissed, and judgment is to enter for the plaintiff against the American Employers’ Insurance Company in the sum of $3,200.00 plus interest from September 16, 1985.
ORDER FOR JUDGMENT
For the foregoing considerations, the plaintiffs complaint against Reliance Insurance Company is ordered DISMISSED without costs, and judgment is to enter for the plaintiff City of Cambridge in the sum of $3,200.00 plus interest from September 16, 1985, and costs.